IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

KEVIN DAVID WILSON,

    Plaintiff,

v.

EDWIN WALKER,

    Defendant.

CIVIL ACTION NO.: 6:14-cv-28

## **ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, who is currently housed at the Georgia Diagnostic and Classification Prison in Jackson, Georgia, filed a 42 U.S.C. § 1983 action, contesting certain conditions of his confinement while he was housed at Smith State Prison in Glennville, Georgia. (Doc. 1.) On March 6, 2015, Defendant Walker ("Defendant") filed a Motion for Summary Judgment. (Doc. 28.) The Clerk of Court mailed a Notice to Plaintiff advising him that Defendant filed a Motion for Summary Judgment and that a response must be filed by March 30, 2015. (Doc. 30.) That Notice further advised Plaintiff that:

    1.    If you do not timely respond to this motion . . . , the consequence may be that the Court will deem the motion unopposed, and the Court may enter judgment against you.

    2.    If your opponent's Statement of Material Facts sets forth facts supported by evidence, the Court may assume that you admit all such facts unless you oppose those facts with your own Statement of Material Facts which also sets forth facts supported by evidence.

    3.    If a summary judgment motion is properly supported, you may not rest on the allegations in your [Complaint] alone.

(Id.) Plaintiff filed no Response to Defendant's Motion for Summary Judgment, and the Court received no indication this Notice or Defendant's Motion was undeliverable. However, "the district court cannot base the entry of summary judgment on the mere fact that the motion [is] unopposed but, rather, must consider the merits of the motion." United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004) (citation omitted). Specifically, the court "must still review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009) (citation omitted). Based on the reasons which follow, Defendant's unopposed Motion should be **GRANTED**, Plaintiff's Complaint should be **DISMISSED**, and this case should be **CLOSED**. In addition, Plaintiff should be **DENIED** leave to proceed *in forma pauperis* on appeal.

## BACKGROUND[1]

Plaintiff contends he was in the J-2 dormitory of Smith State Prison on February 8, 2014, when, during the early morning hours, Defendant Walker shot him nine times with a pepperball projector. (Doc. 1, p. 5.) Plaintiff asserts he was hit on his arms with eight projections and once in his face. According to Plaintiff, Defendant Walker's actions were done unnecessarily and wantonly and constitute cruel and unusual punishment. (Id.) Plaintiff asserts he asked for medical attention but was not taken to the medical unit until noon that same day, which caused him mental and emotional injury. (Id.) Plaintiff's Complaint was served based on Plaintiff's contention Defendant used an excessive amount of force against him, in violation of the Eighth Amendment. (Doc. 9.)

---

[1] The recited allegations are taken from Plaintiff's Complaint and are viewed in the light most favorable to Plaintiff, the non-moving party.

DISCUSSION

Defendant asserts in his Motion that Plaintiff cannot sustain his Eighth Amendment claim against him. (Doc. 28-2, p. 9.) Defendant also asserts he is entitled to qualified immunity. (Id. at pp. 18–21.) Defendant maintains Plaintiff's claims for monetary damages are barred by the Prison Litigation Reform Act because he did not suffer any more than a *de minimis* injury as a result of Defendant's actions. (Id. at pp. 21–22.) In moving for summary judgment, Defendant relies on his Statement of Material Facts, a copy of the transcript from Plaintiff's deposition, Plaintiff's medical records, several declarations sworn under penalty of perjury, and a DVD depicting the February 8, 2014, use of force incident.

As set forth below, the undersigned agrees that Plaintiff fails to establish a genuine dispute as to his claims, and Defendant's Motion is due to be granted as a result.

## I.  Standard of Review

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp.2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and (Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party

must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cty., Fla., 630 F.3d 1346, 1353 (11th Cir. 2011).

**II.    Plaintiff's Use of Force Claim**

Defendant contends several inmates in the lower range of the J-2 dormitory flooded their cells on February 8, 2014, and Plaintiff's cell was adjacent to these cells. (Doc. 28-2, p. 3.) Defendant maintains correctional officers were attempting to address the flooding in the dormitory and "restore order", but several inmates were preventing officers from closing the tray slots on their doors because the inmates had their arms, hands, or faces close to the slot. (Id.) Defendant states Plaintiff admits to being one of the inmates who refused to move his arms out of the tray flap that morning because he was insistent that he receive cleaning supplies. (Id.)

Defendant alleges Duty Officer Eyvette Cook gave Lieutenant Dickson ("Dickson") permission to use minimum force necessary to gain positive control over any inmate who refused to comply with officers' instructions to remove their arms and hands from the tray flaps. (Id. at p. 4.) To this end, Dickson entered the J-2 dormitory with Defendant and three other officers in an effort to obtain compliance with officers' orders from the inmates in that dormitory.

Defendant asserts he was instructed to be armed with a pepperball projector in the event any inmate was preventing officers from closing the tray flaps. According to Defendant, pepperball projectors are accepted as non-lethal devices under Standard Operating Procedure IIB08-0001 and can be used to restore order and maintain positive control of inmates. (Id.) Defendant asserts other officers videotaped this incident, in accordance with policy. Defendant also asserts Dickson gave several commands to the inmates to allow for the closing of their tray flaps. Defendant contends several inmates failed to back away from the flaps, and Dickson repeated that the flaps were to be closed and the cells would be cleaned one at a time. (Id. at pp. 4–5.)

Defendant avers Plaintiff admitted he was told to put his arm inside his cell at least twice before Defendant used the pepperball projector against him. In fact, Defendant states, Plaintiff admitted he told Defendant he was not going to close the flap until he received cleaning supplies. (Id. at p. 5.) Defendant asserts Dickson instructed him to deploy pepperball projector rounds in the direction of Plaintiff's tray flap after Plaintiff once again prevented the flap from being closed. Defendant contends he deployed six projectors at the tray flap, which appeared to hit Plaintiff's right forearm. Defendant asserts Plaintiff still did not remove his arms from the tray flap, so he deployed three more rounds. (Id.) Defendant alleged Plaintiff finally withdrew his arms from the tray flap about twenty seconds later, and the flap was secured without any more force being used. Defendant contends Plaintiff was taken to the medical unit, consistent with policy, for an evaluation. According to Defendant, Plaintiff underwent a use of force assessment, which revealed his vital signs were normal, his oxygen saturation level was 98 to 100%, and the only injuries noted were minor scratches on his arms with no bleeding. (Id. at p. 6.)

Defendant avers he used the minimum amount of force necessary to protect himself and other officers to safely regain positive control. Defendant maintains his actions were taken without malice and without intent to cause Plaintiff any harm. (Id. at p. 7.) Defendant asserts the video evidence and Plaintiff's medical records "compel the entry of summary judgment" in his favor. (Id. at p. 9.)

Plaintiff's excessive use of force claim and Defendant's Motion require analysis of the Eighth Amendment's proscription against cruel and unusual punishment. That proscription governs the amount of force that prison officials are entitled to use against inmates. Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). An excessive force claim has two requisite parts: an objective and a subjective component. Sims v. Mashburn, 25 F.3d 980, 983 (11th Cir. 1994).[2] In order to satisfy the objective component, the inmate must show that the prison official's conduct was "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The subjective component requires a showing that the force used was "maliciously and sadistically for the very purpose of causing harm" rather than "a good faith effort to maintain or restore discipline." Whitley v. Albers, 475 U.S. 312, 320–21 (1986). In order to determine whether the force was used for the malicious and sadistic purpose of causing harm or whether the force was applied in good faith, courts consider the following factors: the need for the exercise of force, the relationship between the need for force and the force applied, the extent of injury that the inmate suffered, the extent of the threat to the safety of staff and other inmates, and any efforts taken to temper the severity of a forceful

---

[2] The Court recognizes the Supreme Court recently held that analysis of excessive force claims brought by pretrial detainees only involves an objective standard. Kingsley v. Hendrickson, No. 14-6368, ___ U.S. ___, 135 S. Ct. 2466, 2474–75 (June 22, 2015). However, the Court distinguished that analysis, proceeding under the Fourteenth Amendment's Due Process Clause applicable to pretrial detainees from the analysis under the Eighth Amendment's Cruel and Unusual Punishment Clause applicable to convicted prisoners such as Plaintiff. Id.

response. Skelly v. Okaloosa Cty. Bd. of Cty. Comm'rs, 456 F. App'x 845, 848 (11th Cir. 2012) (quoting Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009)). "'When considering these factors, [the court] 'give[s] a wide range of deference to [jail] officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance.' [The Court] examine[s] the facts as reasonably perceived by [Defendants and their subordinates] on the basis of the facts known to [them] at the time.'" Shuford v. Conway, 86 F. Supp.3d 1344 (N.D. Ga. 2015) (quoting Fennell, 559 F.3d at 1217–18) (alterations in original).

Through his supporting materials, Defendant shows the following in light of the factors the Court is to consider when analyzing whether an Eighth Amendment use of force was done wantonly and unnecessarily to cause harm.

### A. The Need for the Exercise of Force

The first factor the Court looks to is whether there was a need for the exercise of force in a particular situation. In this case, Plaintiff refused direct commands on at least two occasions to remove his arms from the tray flap so that it could be secured. (Doc. 28-5, pp. 6–7; Doc. 28-6, p. 4.) In fact, Plaintiff admitted during his deposition that he was not going to close the flap and was told at least twice to put his arm back in the cell. (Doc. 28-3, p. 8.) Moreover, the video evidence Defendant submitted reveals Plaintiff refused to follow at least one direct command to close his flap. Specifically, an officer addressed the camera on February 8, 2014, at 7:23 AM and said officers were going to give the inmates a "couple of commands" to take their hands out of the tray flaps. (Doc. 28-8, 0:40.)[3] Although there is a lot of noise from other inmates on the video, it is discernable that an officer gave a command to "close flaps". (Id. at 3:19.) An officer approached Plaintiff's cell, (id. at 3:22), and it appears the officer said something to Plaintiff,

---

[3] The videotaping of an anticipated use of force incident is "a routine supplemental report for ANY use of force." (Doc. 28-5, p. 27.)

who had his arms in the tray flap of his cell. Plaintiff continued having his arms in the tray flap, and Defendant was directed to use the pepperball projector. (Id. at 3:28.) Plaintiff was once again directed to allow officers to close his tray flap, yet he left his arms in the flap. (Id. at 3:33.) Defendant once again used the pepperball projector against Plaintiff. (Id. at 3:36.)

The uncontroverted evidence before the Court reveals Plaintiff disobeyed several direct commands to remove his arms from the tray flap of his cell door. Because Plaintiff disobeyed several direct commands, Defendant was authorized to use some measure of force against Plaintiff in an effort to obtain Plaintiff's compliance with those commands. Thus, this factor weighs in Defendant's favor. Alday v. Groover, No. CV 212-108, 2014 WL 1320093, at *6 (S.D. Ga. Mar. 31, 2014) (noting that plaintiff failed to follow officer's lawful commands and that an "official need not wait until disturbances are dangerous before using force to restore order.") (citing Fennell, 559 F.3d at 1218).

### B. The Relationship Between the Need for the use of Force and the Amount Applied

The Georgia Department of Corrections has implemented a Standard Operating Procedure ("SOP") for the use of force and restraint for inmate control, IIB08-0001. This SOP provides guidelines for officials to employ when using force "to accomplish legitimate and necessary functions" and "to prevent injury to persons or substantial damage to property." (Doc. 28-5, p. 17.) Any use of force against an inmate "is authorized only to the extent necessary to maintain positive control of the inmate[.]" (Id.) The use of force "may include the use of hands, batons, chemical agents, water pressure, firearms, or other instruments." (Id. at pp. 18–19.) Included in acceptable instruments to implement any use of force are pepperball projectors, which "are non-lethal devices that can greatly reduce potential injuries to staff and inmates . . . in quelling disturbances within a facility." (Id. at p. 21.) Only staff who have

8

attended the appropriate training and are certified by the Georgia Department of Corrections can use the pepperball projectors. (Id.) In addition, only the Warden or his designee may authorize the use of the pepperball projectors. (Id.) Defendant is certified in the use of the pepperball projector. (Id. at p. 6.) Dickson received authorization from the duty officer to make an additional command to inmates for compliance and to use appropriate force to gain control over the situation if the inmates would not follow direct orders. (Id. at p. 3.)

As to the second factor, viewing the evidence in the light most favorable to Plaintiff, a reasonable jury arguably could conclude that Defendant subjectively intended to use more force than was absolutely required. However, Plaintiff offers no evidence to support his putative assertion that Defendant did not need to use any force against him. Defendant and the other officers present in the J-2 dormitory had to contend with numerous other inmates, as well as Plaintiff, to obtain their compliance with the directives to remove their arms from the tray flaps. As noted previously, Plaintiff refused to comply with direct orders to remove his arms from the tray flay, even by his own admission.

Looking at the situation at hand, the force efficiently satisfied its purpose in getting Plaintiff to remove his arms from the tray flap, even though it took two attempts to do so. Although the use of a pepperball projector is not a severe method of pain compliance, its use must be measured against its need. There is no doubt that it was actually effective in meeting its intended purpose, as Plaintiff did remove his arms from the tray flap, allowing officers to secure his cell door. Yet, it is possible that even less force would have wrought the same result. From this, a reasonable jury could conclude that the amount of force was not necessary and could have been partially motivated by anger rather than a good faith intent to carry out the government's lawful prerogatives. Therefore, the second factor weighs slightly in Plaintiff's favor. Towson v.

Eastridge, C/A No. 8:13-cv-01876-JFA, 2014 WL 4198846, at *6–*7 (D.S.C. Aug. 22, 2014) (noting a clear dispute of material fact where officer who used a pepperball launcher against the plaintiff on more than one occasion and claimed he followed policy, yet plaintiff alleged he was already restrained when officers shot him again with the pepperball launcher). However, this determination is hardly dispositive of the issues before the Court.

### C. The Extent of Plaintiff's Injuries

The extent of Plaintiff's injuries also weighs in Defendant's favor in Plaintiff's excessive force claim. The extent of injury "is a relevant factor in determining whether the use of force could plausibly have been thought necessary under the circumstances and may be an indication of the amount of force applied." Logan v. Smith, 439 F. App'x 798, 800 (11th Cir. 2011) (citing Wilkins v. Gaddy, 559 U.S. 34, 37 (2010)). However, while the resulting injury can be indicative, the key inquiry is the amount of force applied by Defendant, not the severity of the injury that resulted to Plaintiff. Id. at 800–01 (citing Wilkins, 559 U.S. at 37). Injury and force are "imperfectly correlated," and "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins, 559 U.S. at 38.

Here, the medical evidence of record reveals that, according to the Use of Force Assessment form, Plaintiff's oxygen saturation levels were 98 to 100%, his vital signs were within "normal" limits, and he had small scratches to his left and right forearms, which were treated with saline and bandage application. (Doc. 28-7, pp. 4, 7.) Defendant also submitted a copy of a picture purportedly taken of Plaintiff on the date of the use of force incident, and this picture reveals absolutely no injury to Plaintiff's face. (Id. at p. 9.) Further, Defendant stated he was standing approximately six feet from the cell door before he deployed the pepperball

projections, which is supported by the DVD footage of this event. (Doc. 28-5, p. 8; Doc. 28-8, 3:19.) Moreover, the video footage does not reveal Plaintiff suffered any injuries more significant than the small scratches which were discovered during the medical evaluation. (Doc. 28-8, 3:28–3:55.) This objective evidence contradicts Plaintiff's assertion that he suffered more severe injuries or that the amount of force Defendant used against him was excessive. This factor cuts in Defendant's favor.

### D. Extent of Threat to the Safety of Staff and Other Inmates

Though the inmates were contained in their cells during the use of force incident, if the officers had been unable to gain the inmates' compliance with their direct orders, a disturbance in operations or some other unrest could have occurred. If the operations of a prison are disturbed, there is the potential for great risk to the safety of all involved. This is particularly true here, where officers had to contend with inmates housed in the "Tier II" program who were non-compliant with direct commands.[4] (Doc. 28-5, pp. 3–4.) Thus, this factor weighs in Defendant's favor.

### E. Any Efforts Taken to Temper the Severity of the Forceful Response

Given Plaintiff's injuries resulting from Defendant's use of force, little effort was needed to mitigate the effects of the force. Given the low severity of Plaintiff's injury, the evidence reveals no impropriety and, therefore, cuts in Defendant's favor. Alday, 2014 WL 1320093, at *7. Plaintiff was taken to the medical unit for evaluation, although this evaluation occurred several hours after the use of force incident. (Doc. 28-8, video beginning at 7:23 AM; Doc. 28-7, 11:50 AM as time for use of force assessment.)

---

[4] The Tier II program was "set up . . . to protect staff, offenders and the public from offenders who commit or lead others to commit violent, disruptive, predatory or riotous actions or who otherwise pose a serious threat to the safety and security of the institutional operation. Inmates are placed in the Tier II program as a result of a Classification Committee decision" based on the inmates' actions. (Doc. 28-5, p. 3.) The J-2 dormitory at Smith State Prison is a part of the Tier II program. (Id.)

Of the five factors this Court is to examine to determine whether Defendant used an excessive amount of force against Plaintiff, only one of these factors—the relationship between the need for the use of force and the amount used— could possibly be in Plaintiff's favor. Consequently, Defendant is entitled to summary judgment in his favor, and this portion of his Motion should be **GRANTED**.

It is unnecessary to address the remaining grounds of Defendant's Motion.

### III.     Leave to Appeal *In Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[5] Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. See Fed. R. App. R. 24(a)(1)(A) ("A party who was permitted to proceed *in forma pauperis* in the district-court action, . . ., may proceed on appeal *in forma pauperis* without further authorization, unless the district court—before or after the notice of appeal is filed—certifies that the appeal is not taken in good faith[.]") (italics supplied).  An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit

---

[5] A Certificate of Appealability ("COA") is not required to file an appeal in a Section 1983 action. See Fed. R. App. P. 3 & 4; Morefield v. Smith, No. 607CV010, 2007 WL 1893677, at *1 (S.D. Ga. July 2, 2007) (citing Mathis v. Smith, No. 05-13123-A (11th Cir. Aug. 29, 2005) (unpublished)).

either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Defendant's Motion for Summary Judgment, Plaintiff's potential *in forma pauperis* status on appeal should be **DENIED**, as there are no non-frivolous issues to raise on appeal, and any appeal would not be taken in good faith.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendant's unopposed Motion for Summary Judgment be **GRANTED**. I also **RECOMMEND** that Plaintiff's Complaint be **DISMISSED**, this case be **CLOSED**, and Plaintiff be **DENIED** leave to proceed *in forma pauperis* on appeal.

Any party seeking to object to this Report and Recommendation is **ORDERED** to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence. Furthermore, it is not necessary for a party to repeat legal arguments in objections.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in

whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.  The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the parties.

**SO REPORTED** and **RECOMMENDED**, this 7th day of October, 2015.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA